Richardson, Ch. J.,
delivered the opinion of the court:
These two cases, here consolidated, were transmitted to the court under the Bowman Act by the Committee on War Claims of the House of Representatives; the first, August 20, 1888, in the name of C. B. Wentzell, and the second, August 6,1890, in that of the board of education of Bolivar district, Jefferson County, W. Ya.
The petition to Congress on which one of the cases was transmitted was by O. B. Wentzell, president of the board of education. The claims in both cases in this court, and those before the Quartermaster-General and Congress, are identical, and are for the materials of three school buildings, valued at 12,121.72, taken and used by the Army of the United States during the rebellion in the year 1863. •
*161 The Quartermaster-General regarded tbe claim as one for damages and reported that lie was unable to certify tbat it was just, and be disallowed the same December 14,1887.
The facts as presented by the petitions are, that in the year 1863, three school buildings in Bolivar school district of Jefferson County, Va., afterwards transferred to the State of West Virginia (14 Stat. L., 350), were pulled down, and' the materials used by detachments of the Army engaged in the suppression of the rebellion.
It might be difficult to determine who,' under the laws of West Virginia, is the legal owner of the claim and entitled to prosecute in' this court if it were material. But it is clear from whom the property was taken, and whose loyalty is to be j)assed upon, and that question being decided adversely, the title of the present claimants is wholly immaterial.
At that time Bolivar school district was one of the divisions in the free school system of the Commonwealth of Virginia, under the control and management of a corporation called “The board of school commissioners for the county of Jefferson” (Code of Virginia, 1860, ch. 82, sec. 8), of which the claimants appear to be successors in some way not apparent on the record.
Previously, April 24,1861, Virginia had passed an ordinance of secession from the Federal Union and immediately engaged in open rebellion. This ordinance affected every branch of the State government and made them all disloyal to the United States. The school district boards, under whatever name they existed, were a part of the State, and could not be loyal while the State was in rebellion.
The attorney for the claimant urges that these corporations are like private corporations which have been held loyal by this court when no disloyal act was proved to have been authorized by the corporate body itself, however disloyal the individual members and owners might have been; but they are quite different. They are more like the cities, counties, and other municipal corporations which go to make up the entire State, and whose political status, in peace and in war, is determined by the action of the constituted authorities of the Commonwealth.
*162 The scliool buildings were public property, never owned by the school boards as property is owned by private corporations. The general assembly always exercised authority over such buildings, and placed them in the control of such officers and boards as it designated.
The court finds that the predecessors of the claimants, from whom the supplies are alleged to have been taken, were not loyal to the Government of the United States throughout the war of the rebellion, and the cases are dismissed for want of further jurisdiction.